UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JOSEPH ALLEN PADDOCK** and<br>**TRACY JAYNE PADDOCK**,<br><br>Debtors. | Case No. **14-61077-7** |
| **NORTHWEST PIPE FITTINGS, INC.**,<br><br>Plaintiff.<br>-vs-<br><br>**JOSEPH ALLEN PADDOCK**,<br><br>Defendant. | Adv No. **14-00042** |

## MEMORANDUM OF DECISION

At Butte in said District this 13th day of July, 2015.

In this adversary proceeding the Plaintiff Northwest Pipe Fittings, Inc. ("Plaintiff" or "Northwest") seeks exception of its claim from the Defendant/Debtor Joseph Allen Paddock's ("Paddock" or "Defendant") discharge on grounds of fraud pursuant to 11 U.S.C. § 523(a)(2)(A). The Defendant filed an answer denying committing fraud and asserting a counterclaim for damages under 11 U.S.C. § 525(b) for discriminatory treatment. The Court held a trial in this adversary proceeding at Missoula on June 29, 2015. Plaintiff was represented by attorney Eli Jacob Patten of Crowley Fleck PLLP, of Billings, Montana. Defendant appeared pro se.[1] Exhibit 11 was admitted. The Court took judicial notice of Northwest's Proof of Claim No. 5 filed in the Defendant's

---

[1] Defendant did not file a list of witnesses and exhibits in compliance with this Court's pretrial scheduling Order (Document No. 11). In consequence, the Court prohibited the Defendant from calling any witnesses or offering any exhibits.

1

chapter 7 case No. 14-61077-7. Northwest's president Randy Bentley ("Bentley") testified, as did Northwest's Kalispell branch manager Dan Allen. At the conclusion of Plaintiff's case-in-chief the Court took Northwest's motion for a directed verdict on Defendant's counterclaim under advisement, along with Plaintiff's § 523(a)(2)(A) claim. After review of the record and applicable law, for the reasons set forth below a separate Judgment shall be entered dismissing Defendant's counterclaim, and dismissing Plaintiff's § 523(a)(2)(A) claim seeking exception from discharge. Each side shall bear its own costs incurred in this action.

This Court has jurisdiction under 28 U.S.C. § 1334(b) as this adversary proceeding is arising in and related to the above-captioned Chapter 7 bankruptcy case, in which a discharge was entered on December 3, 2014. A determination as to the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I); and Defendant's § 525(b) counterclaim is a core proceeding under § 157(b)(2)(O). This Memorandum of Decision includes the Court's findings of fact and conclusions of law under F.R.B.P. Rule 7052 (applying Fed. R. Civ. P. 52 in adversary proceedings).

Prior to hearing testimony at the trial, the Court disposed of Plaintiff's written pretrial motions. First, the Court denied Plaintiff's motion for summary judgment because the date for the Plaintiff to file a response to the summary judgment motion ran through the date set for the trial, after allowance for the 3-day "mailing rule" added by F.R.B.P. 9006(f).[2] Plaintiff also filed a motion in limine (Document No. 18) seeking entry of judgment dismissing Defendant's § 525(b) counterclaim with prejudice and to preclude Defendant from introducing evidence at trial based on Defendant's failure to file a witness and exhibit list, and failure to respond to Plaintiff's discovery

---

[2]The 3-day mailing rule was in effect because Plaintiff included a notice with its motion.

2

requests.

In response to enquiries by the Court Paddock gave conflicting answers. Asked whether he received Plaintiff's discovery requests, Paddock at first answered "Yes," but later stated that he did not receive them and he admitted that he did not serve Plaintiff with responses to its Requests for Admissions ("RFAs"). He explained that he cannot afford an attorney and did not understand what the discovery requests meant.

The Court verified that the Defendant's address for service remains the address on the case docket, i.e., 290 Bayou Rd., Kalispell, MT 59901, where Plaintiff mailed its discovery requests to the Defendant. Paddock stated that he received the summons and complaint at his address of record, that he worked with an attorney[3] in preparing his answer and counterclaim, and that he still wishes to pursue his counterclaim, even though he did not file witness and exhibit lists. Based on Defendant's failure to filed witness and exhibit lists as ordered by this Court's pretrial scheduling Order,[4] and his failure to respond to Plaintiff's RFAs which were served on him at his address of record, based on Fed. R. Civ. P. Rule 36(a)(3) (applicable in adversary proceedings under F.R.B.P. 7036) the Court granted Plaintiff's motion in limine in part and prohibited the Defendant from offering any evidence in support of his counterclaim.

## FACTS & PROCEDURAL HISTORY

Bentley is president of the Plaintiff Northwest, which is a corporation in the business of

---

[3]Paddock identified the attorney as James H. Cossitt of Kalispell, Montana.

[4]After the pretrial scheduling conference held on March 4, 2015, in which Paddock participated, this Court entered a scheduling Order (Doc. 11) setting deadlines and the trial date. One deadline set was June 22, 2015, for filing and exchanging lists of witnesses and exhibits. Plaintiff filed and exchanged witness and exhibit lists by the deadline. Paddock did not.

selling pipefitting, plumbing and heating supplies and has a shop in Kalispell, where Allen is its branch manager. Paddock was a long-time customer who bought supplies from Northwest on account. Bentley testified that he became aware that Paddock's account had grown to over $40,000, so Bentley became involved and traveled to Kalispell to work out a payment schedule with Paddock and Allen.

Bentley met Paddock once[5] for breakfast in Kalispell, with Allen. Bentley testified that at that meeting Paddock represented that he was willing to liquidate his vehicles and equipment and use the proceeds to pay his account.[6] Paddock also said that he could bring in new business for Northwest if it would employ him. Bentley testified that he had a lot of faith in Paddock after meeting with him, and he felt that Paddock would be an asset to his company. Bentley agreed that Northwest should hire Paddock as an employee at the same time they expected Paddock to sell his vehicles and equipment and pay Plaintiff the proceeds.

Asked on direct examination if he relied on Paddock's promises to liquidate his equipment and pay off his bill when deciding to employ Paddock, Bentley answered "No." However, Bentley testified that he expected Paddock to pay the Plaintiff proceeds from the sale of his vehicles, tools and equipment. The evidence shows that Paddock did make a couple of payments to Plaintiff toward his debt, in an amount between $400 and $500 according to Bentley.

Allen testified that Paddock sold two vehicles, a GMC truck and a Ford truck, which

---

[5] Bentley testified that he had one later telephone conversation with Paddock in which Paddock offered to settle the debt for $7,100. Bentley testified that he was on medication he identified as Oxycontin from surgery, and that he referred the offer to Allen.

[6] Allen testified that Paddock spoke of selling his vehicles and equipment to pay his debt after he was hired by Plaintiff. But Allen agreed that Paddock promised to sell his assets and pay Plaintiff.

Paddock placed for sale outside of Northwest's Kalispell shop. Allen testified that Paddock's Ford truck needed transmission repairs and that Paddock took it to a repair shop, but lacked the funds to pay for the repairs and "get it out of hock." Allen testified that Paddock said the value of the GMC truck was $10,000, but that it needed $3,400 in repairs which the eventual buyer deducted from the purchase price.

Paddock went to work for Northwest and completed the probationary employment period without any problems. Bentley testified that Northwest offered to help Paddock liquidate his vehicles and equipment, but that Paddock refused. Paddock told Northwest that he was trying to sell his vehicles and equipment, but eventually Allen informed Bentley that Paddock had sold all his vehicles and equipment without paying off his debt.

Plaintiff asked Paddock to agree to a payroll deduction to pay off his debt. Bentley testified that they asked for a $400 deduction from Paddock's wages. Plaintiff prepared Ex. 11 which provides for payment of $46,803.13 plus annual interest of 18 percent (18%) at the rate of $400 from each pay period. Paddock refused to sign Ex. 11.

Bentley testified that it became evident to him that Paddock would not pay his debt, so Northwest went to state court to collect the debt, and obtained a judgment against Paddock and other parties. Bentley testified that if Northwest had gotten its judgment against Paddock in May of 2013 instead of in 2014, it would have executed against Paddock's vehicles and equipment and sold them and applied the proceeds against his debt. No evidence exists in the record, however, itemizing Paddock's vehicles and equipment as of any date, or showing any valuation of his assets in 2013.

Paddock filed a voluntary joint Chapter 7 petition on September 11, 2014, with his spouse.

5

Plaintiff filed Proof of Claim No. 5 in the main case on December 2, 2014, asserting an unsecured nonpriority claim in the amount of $46,540.83. The "basis of claim" on Proof of Claim 5 is described as "goods sold/judgment." Attached to Claim 5 is a copy of a judgment by default against Paddock and other parties in Cause No. DV-14-139B in the Montana Eleventh Judicial District Court, Flathead County, in the amount of $48,299.64 as of March 19, 2014.

Also on December 2, 2014, Northwest commenced this adversary proceeding seeking exception of its debt from Paddock's discharge. An Order (Doc. 9) setting a scheduling conference was mailed to Paddock at 290 Bayou Road in Kalispell; Paddock participated in the telephonic scheduling conference on March 4, 2015. This Court's Scheduling Order, Doc. 11, required the parties to file and exchange witness and exhibit lists by June 22, 2015. That Order was mailed to Paddock at 290 Bayou Road in Kalispell on March 6, 2015. Plaintiff filed witness and exhibit lists on June 22, 2015. Paddock did not.

Plaintiff's attorney mailed its combined discovery requests to Paddock at 290 Bayou Road in Kalispell on April 22, 2015, according to the certificate of service filed at Doc. 13-1. Paddock admitted that he did not serve Plaintiff with responses to its RFAs or other discovery requests. "A matter is deemed admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Rule 36(a)(3). The following of Plaintiff's RFAs from Doc. 13 are deemed admitted based upon Paddock's failure to respond:

> REQUEST FOR ADMISSION NO. 1: Please admit that you resigned your position of employment with Northwest.
>
> REQUEST FOR ADMISSION NO. 2: Please admit that you were not terminated from your position of employment with Northwest.

6

REQUEST FOR ADMISSION NO. 3: Please admit that you promised to pay Northwest the debt you incurred if you were given a job with Northwest.

REQUEST FOR ADMISSION NO. 4: Please admit that Northwest delayed enforcement or other collection activities as a result of your promise to pay to Northwest the debt you incurred.

REQUEST FOR ADMISSION NO. 5: Please admit that you had no intention of paying the debt you owed to Northwest at the time you made your promise to pay the debt if you were given a job with Northwest.

REQUEST FOR ADMISSION NO. 6: Please admit that any disciplinary action by Northwest toward you occurred prior to the filing of the Bankruptcy Proceeding and was not connected to your filing of bankruptcy.

REQUEST FOR ADMISSION NO. 7: Please admit that Northwest did not communicate with you regarding the repayment of your debt following your filing of the Bankruptcy Proceeding nor condition your continued employment on the repayment of the debt.

## DISCUSSION

### I. § 525(b) – Discrimination.

Paddock's counterclaim seeks damages from Plaintiff based on § 525(b), alleging that Northwest personnel became hostile and created a hostile work environment. Section 525(b) prohibits a private employer from terminating the employment of or discriminating with respect to employment a debtor who is or has been a debtor in bankruptcy.

Paddock informed the Court at trial that an attorney drafted his answer and counterclaim, and that he did not understand it but wished to proceed with his counterclaim. The Court granted Plaintiff's motion in limine in part, and prohibited Paddock from offering any testimony or exhibits because he did not file and serve Plaintiff with lists of witnesses and exhibits as ordered by the Court.

Defendant is pro se in this case, and courts have a duty to construe pro se pleadings

liberally. *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003); *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Nonetheless, even pro se litigants must follow procedural rules. *See Clinton v. Deutsche Bank Nat'l Trust Co. (In re Clinton)*, 449 B.R. 79, 83 (9th Cir. BAP 2011); *see also Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) (stating that "pro se litigants are not excused from following court rules.").

Paddock asserted that he did not receive Plaintiff's RFAs. However, they were served on Paddock at the same address where the Court served Paddock with orders setting hearings and deadlines. It is clear that Paddock received those Orders, because he attended the trial in person and participated in the pretrial scheduling conference. A common law rebuttable presumption of delivery exists when a party uses regular mail for service. *See In re Boedecker*, 161 B.R. 502, 506 (Bankr. D. Mont. 1993); *Anderson v. U.S.*, 966 F.2d 487, 491 (9th Cir. 1992) adopting *Wood v. Commissioner*, 909 F.2d 1155, 1157 (8th Cir. 1990). The certificate of mailing accompanying Plaintiff's combined discovery requests states that they were served on Paddock at his address of record. He received the complaint and this Court's Orders mailed to him at the same address. The Court concludes that Paddock received Plaintiff's RFAs mailed to the same address.

By failing to respond to Plaintiff's RFAs, those matters are deemed admitted under Rule 7036(a)(3). Once admitted, the matter "is conclusively established unless the court on motion permits withdrawal or amendment of the admission" pursuant to Rule 36(b). Rule 7036(b); *Conlon v. U.S.*, 474 F.3d 616, 621 (9th Cir. 2007). Thus, by operation of Rule 7036(a)(3) the matters in the above-listed RFAs are deemed admitted. Paddock did not filed a motion to permit withdrawal of his admissions pursuant to Rule 7036(b).

Because of Paddock's failure to file lists of witnesses and exhibits in compliance with this

Court's pretrial scheduling Order, the Court prohibited him from offering any testimony or exhibits in support of his counterclaim. The counterclaim therefore fails for lack of supporting evidence of termination of employment or discrimination. In addition, Plaintiff's RFA Nos. 1 and 2 conclusively establish that Paddock resigned and was not terminated from his employment with Northwest. Further, RFA Nos. 6 and 7 conclusively establish that any disciplinary action by Northwest toward Paddock occurred prior to his bankruptcy and was not connected to his bankruptcy filing, and that Northwest did not communicate with him regarding the repayment of his debt following his filing of bankruptcy, nor condition his continued employment on the repayment of the debt.

In sum, Paddock's counterclaim is not supported by any evidence, based on his failure to comply with the Court's scheduling Order, and is further controverted by Paddock's admissions pursuant to Rule 7036(a)(3) resulting from his failure to respond to discovery requests. The Court concludes that Plaintiff is entitled to judgment dismissing the counterclaim.

### II. § 523(a)(2)(A) – Fraud.

Plaintiff's complaint avers a claim for relief to except from Defendant's discharge the sum of $46,540.83 under § 523(a)(2)(A), plus costs and attorneys' fees. Section 523(a)(2)(A) provides that, "a discharge under . . . this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, . . . ."

To establish a claim for an exception to discharge under this provision requires a creditor to demonstrate the existence of five distinct elements by a preponderance of the evidence: (1) the debtor made representations; (2) that at the time the debtor knew they were false; (3) that the

debtor made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made. *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1221 (9th Cir.2010); *Siriani v. Nw. Nat'l Ins. Co. of Milwaukee, WI ( In re Siriani)*, 967 F.2d 302, 304 (9th Cir.1992). Consistent with effectuating the underlying purposes of the Bankruptcy Code, exceptions to discharge under § 523 are to be narrowly construed. *See Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992). A creditor bears the burden of proof to establish each of the five elements by a preponderance of the evidence. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

The first element, representations that Paddock promised to pay, is established by Bentley's testimony and admission from Paddock's failure to respond to RFA 3. The second element has conflicting evidence. Paddock's admission by failing to respond to RFA 5 establishes that he had no intention of paying the debt to Northwest at the time he promised to pay. On the other hand, Northwest's president Bentley and branch manager both testified that Paddock sold two of his vehicles, from outside of Northwest's Kalispell shop, and made Northwest a couple of payments. The evidence on the second element is conflicting.

The third element is whether the debtor made them with the intention and purpose of deceiving the creditor. Paddock's failure to respond to RFA 5 is evidence in support of the third element because it establishes that he had no intention of paying the debt owed to Northwest at the time he promised to pay.

The fourth element is whether the creditor justifiably relied on such representations. On

this element, Bentley answered "No" when asked on direct examination whether he relied on Paddock's promises when giving him a job. That testimony weighs against a finding of justifiable reliance, while Paddock's failure to respond to RFA 4 establishes that Northwest delayed enforcement or collection activities as a result of his promise to pay.

Assuming that the first 4 elements of fraud are proven by the evidence, in order to prevail under § 523(a)(2)(A) Plaintiff still must establish that its claim sought to be discharged arose from an injury proximately resulting from its reliance on the representation made with the intent to deceive. *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir.1991). "Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id*. Moreover, as the United States Supreme Court explained in *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443 (1995), a court may turn to the Restatement (second) of Torts, "the most widely accepted distillation of the common law of torts" for guidance on this issue.

The Restatement (second) of Torts (1976) explains that proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a "substantial factor in determining the course of conduct that results in loss, § 546; and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." § 548A. *See also In re Creta,* 271 B.R. 214, 220 (1st Cir. BAP2002). In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud. *Siriani*, 967 F.2d at 306.

In the instant case, the evidence shows that Paddock owed his entire debt to Northwest prior to his representations made in 2014 promising to pay. Absent his promise to pay, the

evidence shows plainly that Paddock's debt to Northwest would have been the same.

As explained in *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998), the Ninth Circuit now only requires that the liability arise or flow from the fraud. No direct or indirect benefit is required. *Id.*; *Gomeshi v. Sabban (In re Sabban)*, 384 B.R. 1, 7-8 (9th Cir. BAP 2008) *aff'd*, 600 F.3d 1219 ("Because [the debtor's liability] did not arise or flow from Debtor's fraudulent conduct, the bankruptcy court correctly held that section 523(a)(2)(A) did not apply to that debt."). Whether the Debtor's liability arose or flowed from the fraud is, in essence, an inquiry into proximate cause. *See In re Sabban*, 600 F.3d at 1223.

Northwest contends that Paddock's promises earned him Northwest's forbearance from pursuing collection of its debt. A creditor's decision to forbear is not actionable under § 523(a)(2)(A) unless the debtor induced that forbearance by making a false representation. *See FO–Farmer's Outlet, Inc. v. Daniell (In re Daniell)*, 2013 WL 5933657, at * *9–10 (9th Cir.BAP2013). Paddock's failure to respond to RFA 4 results in his admission that Northwest delayed enforcement or collection activities as a result of his promise to pay. However, in order to prevail on a § 523(a)(2)(A) claim based on the creditor's forbearance, the creditor must prove, among other things, that at the time of the forbearance, "it had valuable collection remedies." *Cho–Hung Bank v. Kim (In re Kim)*, 163 B.R. 157, 161 (9th Cir.BAP1994), *aff'd and adopted*, 62 F.3d 1511 (9th Cir.1995); *see also Siriani*, 967 F.2d at 305 (same holding in the context of § 523(a)(2)(B)). The creditor also must prove that "those remedies lost value" during the time of forbearance. *Kim*, 163 B.R. at 161. In short, the creditor proves proximate causation and damages only to the extent it shows that its remedies lost value during the forbearance period. *Id.*

Northwest failed to show any amount by which its remedies lost value during the

forbearance period.  Northwest wants judgment in the full amount of its Proof of Claim excepted from the Defendant's discharge, $46,540.83.  However, Northwest did not offer into evidence any itemized list of the Defendant's equipment and vehicles, or their value, and did not offer any expert testimony or other testimony upon which this Court could make a finding of any amount of any damages proximately caused by Paddock's fraud which induced Northwest to forbear from collecting its debt in 2013.  There is simply no evidence of value of Paddock's vehicles and equipment in the record, with two exceptions.

The two exceptions are a GMC truck and a Ford truck, both of which Paddock placed outside of Northwest's Kalispell shop for sale.  Allen testified that both of those vehicles needed considerable repair, which the Court presumes reduced their value.  As for the rest of Paddock's vehicles and equipment, Northwest offered no evidence establishing their value or the damages Northwest incurred by its forbearance.  The fifth element finds no support from Paddock's failure to respond to Northwest's RFAs.  Narrowly construing exceptions to discharge under § 523 as this Court must, *Snoke v. Riso*, 978 F.2d at 1154, this Court finds and concludes that Plaintiff failed its burden of proof under the fifth element to show that its claim sought to be discharged arose from an injury proximately resulting from its reliance on Paddock's representations in 2014.  *See Britton*, 950 F.2d at 604.  Judgment shall be entered in Defendant's favor dismissing Plaintiff's § 523(a)(2)(A) complaint.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 1334(b) as this adversary proceeding is arising in and related to the above-captioned Chapter 7 bankruptcy case.

2. This adversary proceeding as to the dischargeability of a particular debt is a core

proceeding under 28 U.S.C. § 157(b)(2)(I); Defendant's § 525(b) counterclaim is a core proceeding under § 157(b)(2)(O).

3. Defendant's counterclaim based on 11 U.S.C. 525(b) is not supported by any evidence, and is controverted by Defendant's admissions resulting from his failure to respond to Plaintiff's requests for admissions.

4. The Plaintiff failed to satisfy its burden of proof under 11 U.S.C. § 523(a)(2)(A) to show by a preponderance of the evidence that its claim sought to be discharged arose from an injury proximately resulting from its reliance on the Defendant's representation made with the intent to deceive. Plaintiff's claim predated the Defendant's representations, and Plaintiff failed to offer evidence the amount of value that its remedies lost during its forbearance.

**IT IS ORDERED** a separate Judgment shall be entered dismissing Plaintiff's claim seeking exception from Defendant's discharge of its claim under 11 U.S.C. § 523(a)(2)(A), and dismissing Defendant's counterclaim based on 11 U.S.C. § 525(b). Each party shall bear its own costs incurred in this adversary proceeding.

_____
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge